IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                        No. 1:10-cr-10016-JDB-1

CARLOS MORRIS,

      Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
_____

Pursuant to a judgment entered June 8, 2018, the Defendant, Carlos Morris, was sentenced to 188 months' imprisonment, to be followed by four years of supervised release, upon a guilty plea to distributing and possessing with intent to distribute over five grams of crack cocaine and to distributing and possessing with intent to distribute over fifty grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  (Docket Entry ("D.E.") 115.)  He is currently incarcerated in Bureau of Prisons ("BOP") custody and has a projected release date of December 21, 2027. https://www.bop.gov/inmateloc/ (last visited Mar. 25, 2021).  Before the Court is his motion for compassionate release (D.E. 140), to which the Government has responded, opposing the relief sought (D.E. 143), and the Defendant has replied (D.E. 145).

Morris petitions the Court in light of the ongoing COVID-19 pandemic.  According to the BOP's website, 227 inmates and four staff members have perished at its facilities nationwide from the disease.  https://www.bop.gov/coronavirus/ (last visited Mar. 25, 2021).  Understandably, the pandemic has raised alarm bells throughout the United States' federal prison population, prompting a flood of motions for release filed on behalf of the unwilling residents of these

institutions, where life in close quarters is the norm.  Currently, Edgefield Federal Correctional

Institution in South Carolina, where Morris is housed, has zero positive inmate cases of the virus

and three total inmate deaths.  (*Id.*) (last visited Mar. 25, 2021).  There are twenty-three active

cases among staff members at the facility.  (*Id.*) (last visited Mar. 25, 2021).

Compassionate release requests are governed by 18 U.S.C. § 3582(c)(1)(A), which

provides in pertinent part that

> [t]he court may not modify a term of imprisonment once it has been imposed except
> that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all administrative
> rights to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment . . ., after considering the factors set forth in [18 U.S.C. §] 3553(a) to
> the extent that they are applicable, if it finds that . . . extraordinary and compelling
> reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The statute's exhaustion requirement is a "mandatory condition." *United States v. Alam*,

960 F.3d 831, 833 (6th Cir. 2020).  Thus, under the statute, "an imprisoned person may file a

motion for compassionate release after (1) exhausting the BOP's administrative process; or (2)

thirty days after the warden received the compassionate release request—whichever is earlier."

*United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020).   As the Government concedes that

Defendant has exhausted his administrative remedies, the Court will move to the merits of his

request for relief.

"In resolving [§ 3582(c)(1)(A)] motions, district courts now face two questions:  (1)

whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether

the applicable § 3553(a) factors warrant such a reduction."[1] *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021). The district court may deny a compassionate release motion if one of the prerequisites is lacking and need not address the other. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). It is the burden of the defendant to establish he is entitled to compassionate release. *United States v. Poole*, 472 F. Supp. 3d 450, 455 (W.D. Tenn. 2020).

With respect to the "extraordinary and compelling" inquiry, the Defendant, who is forty-six years old, submits that he suffers from hypertension, a history of congestive heart failure, diabetes, sleep apnea, obesity, and a calcified granuloma on his left lung. BOP medical records from December 22, 2020, documented diabetes and hypertension, for which he was taking medication. (D.E. 143-1 at PageID 646-51.) The medical provider noted that, despite these conditions, a review of Morris' commissary account reflected purchases of Cheetos, cheese spread, chips, soda, cracklins, pickles, and ice cream. (*Id.* at PageID 646.) The provider also observed that he had a 19.1 percent ten-year risk of heart disease or stroke and was taking Atorvastatin daily. (*Id.*) On examination, he denied chest pain and his lungs were clear to auscultation. (*Id.* at PageID 647.)

Assuming for the sake of argument that the inmate's conditions constitute extraordinary and compelling reasons warranting release, the Court finds that the applicable § 3553(a) factors do not favor such relief. The factors include, among other things, the "nature and circumstances of the offense"; the "history and characteristics of the defendant"; and the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to

---

[1]"A third consideration, the [U.S.S.G.] § 1B1.13 policy statement, is no longer a requirement courts must address in ruling on defendant-filed motions." *Hampton*, 985 F.3d at 531.

protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). "[I]n a reduction-of-sentence proceeding, as at sentencing, the district court is best situated to balance the § 3553(a) factors." *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) (quoting *United States v. Keefer*, 832 F. App'x 359, 363 (6th Cir. 2020)) (internal quotation marks omitted).

According to the Presentence Investigation Report ("PSR"), Morris' criminal record includes adult convictions for theft (2) at age nineteen (D.E. 140-3 ¶¶ 33, 35); possession of cocaine with intent at twenty-four (2) (*id.* ¶¶ 42-43); possession of cocaine with intent to sell, possession of marijuana, and possession of drug paraphernalia at thirty-one (*id.* ¶ 45); and eluding and resisting a police officer at thirty-nine (*id.* ¶ 48), as well as numerous driving offenses (*id.* ¶¶ 36-41, 44-47).[2] The eluding and resisting convictions, which occurred in 2014, arose from Morris' arrest during a traffic stop. (*Id.* ¶ 48.) When officers attempted to make the stop, Defendant accelerated rapidly to a speed in excess of ninety miles per hour, narrowly avoiding collisions with other vehicles as he ran red lights. (*Id.*) He stopped, exited his vehicle, and ran through neighborhoods, refusing to obey officers' commands until he was apprehended and forcibly placed in handcuffs. (*Id.*) It was discovered that he was a fugitive living under an assumed name. (*Id.*) Arrests for other crimes, including disorderly conduct, aggravated assault, and cocaine possession, were dismissed. (*Id.* ¶¶ 53-55.) His probation was revoked in 2006 after he tested positive for cocaine and he was arrested for drug offenses. (*Id.* ¶ 42.) A probation warrant was issued in 2009 after he engaged in drug transactions, was not steadily employed, his whereabouts were unknown, and he owed over $2,000 in fines and court costs. (*Id.*) At the time the PSR was prepared, the probation violation warrant had not been served. (*Id.*) In a supplemental filing, the probation

---

[2]The PSR also documents juvenile adjudications. (*Id.* ¶¶ 30-32.)

officer noted that the movant's probation was revoked and his original sentence imposed on August 3, 2015. (*Id.* at PageID 623.)

The PSR reported that Morris began smoking marijuana when he was thirteen and experimented with a number of illicit substances, including mushrooms and designer and club drugs. (*Id.* ¶¶ 70-75.) He stated to the probation officer that he only smoked marijuana a couple of times a month, drank a beer at least every other day, and used cocaine during the holidays. (*Id.* ¶¶ 71-72, 74.) At the time of sentencing, the inmate suffered from congestive heart failure, sleep apnea, high blood pressure, and arthritis. (*Id.* ¶ 67.) He graduated from high school and completed at least two years of higher education. (*Id.* at PageID 616.)

In connection with the instant conviction, Defendant sold crack cocaine to an undercover agent on two occasions totaling 115.1 grams. (*Id.* ¶¶ 5-12, 19.) The acts occurred while he was on state probation. (*Id.* at PageID 617.) In performing its sentencing calculation, the PSR enhanced movant's offense level based on his classification as a career offender and assigned a three-level reduction for acceptance of responsibility. (*Id.* ¶¶ 25-27.) Based on a total offense level of 31 and a criminal history category of VI, the guideline imprisonment range was calculated as 188 to 235 months. (*Id.* ¶ 87.) Thus, the inmate's sentence fell at the bottom of the guideline range. A copy of a BOP program review dated June 29, 2020, indicated that he had no prison disciplinary infractions during the previous six months. (D.E. 140-1 at PageID 412.)

Applying the § 3553(a) factors, the Court finds that the history and characteristics factor is mixed, but on balance weighs against release. While he has apparently avoided trouble in prison, his history of drug crimes, drug use, and probation violations, as well as his conviction for evading/resisting police, are of concern to the Court. Indeed, but for his unwillingness to follow the conditions of his state probation, he would not have landed himself in federal prison in this

5

case.  With respect to the nature and circumstances of the offense factor, the inmate's counsel focuses on the "non-violent" aspect of the drug-related crimes of conviction.   However, the amount of crack cocaine involved in these "non-violent" crimes was rather substantial.  He also, as previously noted, committed these serious offenses while on probation for another drug conviction.  As recognized recently by a district court in this circuit, motions for compassionate release have been readily denied where an inmate has an elevated medical risk associated with COVID-19, has been convicted of a serious drug crime, and, like Morris, has served less than half his sentence.  *See United States v. Dent*, Case No. 10-20112, 2021 WL 872213, at *4 (E.D. Mich. Mar. 8, 2021) (collecting cases), *appeal filed* (6th Cir. Mar. 15, 2021) (No. 21-1253).  Because the original sentence was at the bottom of the guideline range and Morris has served less than half of that sentence, a reduction would result in a term of imprisonment significantly below the range. Such a reduction, on the facts of this case, would not reflect the seriousness of the offenses for which he was convicted, promote respect for the law, provide just punishment for the offenses, afford adequate deterrence to criminal conduct, or protect the public from further crimes of the Defendant.

Based on its consideration of all the above, the Court concludes that Morris is not a good candidate for compassionate release.  The motion is, therefore, DENIED.

IT IS SO ORDERED this 25th day of March 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE